UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARTIN JOSEPH STRICKER,

     Plaintiff,

v.                          CASE No. 8:09-CV-1875-T-27TGW

RICHARD GANEY, et al.,

     Defendants.

_____

## REPORT AND RECOMMENDATION

In 2006, the plaintiff turned his vehicle license plate in to Florida's Department of Motor Vehicles and began driving around with a license plate bearing the legend "Little Shell Pembina Band of North America." As a result, he was arrested by a Winter Haven police officer and was eventually convicted of the offenses of no motor vehicle registration and attaching unassigned tag. The plaintiff did not appeal the convictions or otherwise seek to overturn them.

Nevertheless, in this pro se lawsuit, pursuant to 42 U.S.C. 1983, the plaintiff has sued virtually everyone he thought played a role in his arrest, detention, and conviction, including the judge, the prosecutor, the jail

booking clerk, and the sheriff who operated the jail. The rambling amended complaint does not support relief on any of the six counts, although the claim against the police officer may also be appropriately resolved by way of summary judgment. Moreover, as the defendants argue, most of the claims are foreclosed by Heck v. Humphrey, 512 U.S. 477 (1994), since recovery on them would imply that the plaintiff's (unchallenged) convictions are invalid. Consequently, the defendants' motions to dismiss should be granted (Docs. 54, 55, 58, 63, 79), as should the police officer's alternative motion for summary judgment (Doc. 54).

I.

On July 11, 2006, the plaintiff, Martin Joseph Stricker, was pulled over by defendant Richard Ganey of the Winter Haven Police Department because he had attached to his vehicle only a license plate entitled "Little Shell Pembina Band of North America." After Ganey checked the police database, he determined that it did not appear to be a registered vehicle. The plaintiff, who lists a Winter Haven, Florida, address, was arrested on charges of possession of a counterfeit driver's license, possession of a counterfeit license plate, and unregistered motor vehicle (Doc. 51, pp. 4-5, 18). The plaintiff was jailed and released on bond (id., pp. 5-6).

-2-

The plaintiff appeared for an initial hearing on August 15, 2006, and was released after filing a notice of appearance (id., p. 6). Despite his appearance, the plaintiff was mistakenly re-arrested on August 28, 2006, for failing to appear at the August 15th hearing and, as a result, his initial bond of $1,500 was forfeited (id.). The plaintiff was released a few days later, after posting a $3,000 bond (id.). A hearing was held on October 5, 2006, regarding the failure to appear and his forfeited bond was released after it was determined that the plaintiff had, in fact, appeared at the August 15th hearing (id., p. 8).

On July 12, 2007, defendant Bradford H. Copley, an assistant state attorney, filed new charges of unregistered motor vehicle, and attaching unassigned tag stemming from the July 11, 2006, arrest (id., pp. 18, 19-20). Approximately one week later, the charges of counterfeit driver's license, counterfeit license plate, and unregistered motor vehicle were *nolle prossed* (id., p. 18). Defendant Ron Feschak, an employee of the State Attorney's Office, allegedly wrote the new charges and wrongfully backdated them to the initial arrest date of July 11, 2006 (id., pp. 6-7).

Ultimately, defendant Polk County Judge Robert L. Williams, on August 30, 2007, found the plaintiff guilty of no motor vehicle registration

and attaching unassigned tag (id., pp. 7-8, 21-22). Judge Williams sentenced the plaintiff to 45 hours of community service at the Polk County hazardous waste site (of which the plaintiff performed 42.5 hours), and imposed a $530 fine (id., pp. 21-23). The plaintiff completed his sentence without appealing his conviction (id., p. 8).

The plaintiff filed this lawsuit on September 14, 2009, seeking relief on seven claims pursuant to 42 U.S.C. 1983 (Doc. 1). The defendants thereafter filed motions to dismiss the plaintiff's complaint and those motions were referred to me for a report and recommendation. A lengthy hearing was held on the matters and the plaintiff was informed of deficiencies in his shotgun-style complaint. Also, the plaintiff was warned that he could be subject to sanctions, including attorneys' fees, for naming in any amended complaint as defendants Judge Williams and Copley, because, in light of the facts alleged, his claims against them were obviously precluded by judicial immunity and prosecutorial immunity. In addition, the plaintiff was also cautioned that his complaint against the then-unnamed Polk County booking deputy, defendant Ashley N. George, was similarly frivolous. Due to the deficiencies, the plaintiff elected to file an amended complaint, as he was entitled to do under Rule 15(a)(1)(A), F.R.Civ.P. (Doc. 44). Disregarding my

warnings, the plaintiff subsequently filed an amended complaint against most of the original defendants, including Judge Williams, Copley, and George on nearly identical facts and counts (Doc. 51).

In his amended complaint, the plaintiff alleges that Ganey "in collusion with the other named defendants" violated his First, Fourth, Fifth, Sixth, Thirteenth, and Fourteenth Amendment rights because Ganey arrested him "without jurisdiction" (id., pp. 2, 9)(emphasis omitted). He also complains that all the defendants acted outside the scope of their authority in violation of the Fourth, Fifth, Ninth, and Tenth Amendments (id., p. 9).

Specifically, in count one, the plaintiff alleges that Ganey falsely arrested him without probable cause (id., pp. 13-14). Count two includes a charge for false imprisonment, stemming from the arrest, which the plaintiff attributes to, among others, George, who simply booked the plaintiff at the jail (id., p. 14). He claims further that George acted "in collusion with" Ganey (id.). The plaintiff's allegation in count three relates to the second imprisonment when he was arrested for failure to appear (id., pp. 14-15). The blame for the mistaken arrest is also placed on Ganey and unnamed "agents of the State Attorney's Office" when they caused the plaintiff to be restrained "without cause and without factual evidence in support of Ganey's false

charges" (id., p. 15). While not served or named as a defendant in the case, the State of Florida is accused in count four of holding the plaintiff in custody without cause (id., pp. 15-16). Count five for malicious prosecution and count six for involuntary servitude state that Judge Williams and Copley acted outside the bounds of their authority in the prosecution, conviction, and sentencing of the plaintiff (id., pp. 16-17).

The defendants subsequently filed motions to dismiss the plaintiff's amended complaint, arguing that he failed to state a claim upon which relief can be granted. The plaintiff filed memoranda in opposition. The motions were referred to me for a report and recommendation. After another lengthy hearing, the parties were provided additional time in which to file supplemental memoranda, which they did. Also, because Ganey had filed an affidavit in support of his alternative motion for summary judgment, the plaintiff was given twenty-one days to file an affidavit contravening Ganey's affidavit (Doc. 91).

## II.

A complaint may be dismissed upon motion under Rule 12(b)(6), F.R.Civ.P., for "failure to state a claim upon which relief can be granted." The United States Supreme Court has retired the standard in Conley v.

Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," in favor of a stricter pleading standard. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Thus, although a complaint does not need detailed factual allegations, a formulaic recitation of the elements of a cause of action will not do. Id. Rather, factual allegations must be enough to raise a right to relief above the speculative level, based on the assumption that the allegations are true (even if doubtful in fact). Id.

The Eleventh Circuit in Watts v. Florida International University, 495 F.3d 1289, 1295-96 (11th Cir. 2007)(citations omitted), summarized the principles established by Twombly as follows:

> The Supreme Court's most recent formulation of the pleading specificity standard is that "stating such a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. The standard is one of "plausible grounds to infer." The Court has instructed us that the rule "does not impose a probability requirement at the pleading stage" but instead "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. It is sufficient if the complaint succeeds in "identifying facts that are suggestive enough to render [the element] plausible."

The Eleventh Circuit made clear that it remains the law that, on a Rule 12(b)(6) motion to dismiss, the pleadings are construed broadly, and the allegations in the complaint are viewed in the light most favorable to the plaintiff. Watts v. Florida International University, supra, 495 F.3d at 1295.

The Supreme Court has recently applied the Twombly plausibility standard in Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937 (2009). The Eleventh Circuit has explicated the following "working principles" of those two decisions in American Dental Association v. Cigna Corporation, ___ F.3d ___, 2010 WL 1930128 at *4 (11th Cir. 2010):

> First, the Court held that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." [Ashcroft v. Iqbal, supra, ___ U.S. ___, 129 S.Ct. at 1949]. Second, restating the plausibility standard, the Court held that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)[.)] The Court suggested that courts considering motions to dismiss adopt a "two-pronged approach" in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. Importantly, the Court held in Iqbal, as it had in Twombly, that courts may

infer from the factual allegations in the complaint "obvious alternative explanation[s]," which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer. Id. at 1951-52 (quoting Twombly, 550 U.S. at 567, 127 S.Ct. at 1972). Finally, the Court in Iqbal explicitly held that the Twombly plausibility standard applies to all civil actions, not merely antitrust actions, because it is an interpretation of Rule 8. Id. at 1953.

Of course, the pleadings of pro se litigants are to be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Nevertheless, they must satisfy the requirements of Twombly and Iqbal.

III.

The plaintiff relies solely upon 42 U.S.C. 1983 as the basis for relief of each of his six claims (Doc. 51, p. 2).* "Section 1983 provides individuals with a federal remedy for the deprivation of rights protected by the U.S. Constitution." Rushing v. Parker, 599 F.3d 1263, 1265 (11th Cir. 2010)(citation omitted). That section "permits a plaintiff to obtain civil damages from any person who deprives him of constitutional rights, so long as that person is acting under color of state law." Weaver v. Geiger, 294 Fed. Appx. 529, 532 (11th Cir. 2008)(unpub. dec.). However, "section 1983 itself

---

*The plaintiff, again, demands a three-judge district court to hear the matter and for an injunction (Doc. 51, pp. 2-3). Those requests have been denied previously (Doc. 4). The plaintiff did not seek reconsideration of that Order.

creates no substantive rights; it merely provides a remedy for deprivations of federal rights established elsewhere." Wideman v. Shallowford Community Hospital, Inc., 826 F.2d 1030, 1032 (11ᵗʰ Cir. 1987)(citations omitted).

Section 1983 does not provide relief for violations of state law. Knight v. Jacobson, 300 F.3d 1272, 1276 (11ᵗʰ Cir. 2002). Consequently, the plaintiff's various allegations of state law violations do not support relief. Moreover, an examination of each of the plaintiff's six claims establishes that relief is not warranted under federal law either.

A. First Claim.

The plaintiff's first claim "is that Richard Ganey, acted *without jurisdiction* and outside the scope of his authority while acting under color of law, by arresting [the plaintiff] without cause on the 11ᵗʰ day of July, 2006, at 9:35am until about 10:35am, as a direct and proximate result of policies and customs of the City of Winter Haven as practiced by Officer Ganey and condoned by the City of Winter Haven Police department, which unlawful arrest injured [the plaintiff] by loss of liberty, damage to [his] reputation and caused [him] extensive financial hardship from which [he] can never fully recover and for which [he is] entitled to and claim damages in the amount of $60,000" (Doc. 51, ¶55). He supports this claim merely by the allegation that

he had committed no crime because he had "a valid Pembina Tag, License and Registration on [his] private automobile" (id., ¶53). The plaintiff, however, has made no showing that Florida recognizes the Pembina tag as valid. Consequently, it is proper to conclude that Ganey had probable cause to arrest the plaintiff for an unregistered motor vehicle. As indicated, under Twombly and Iqbal, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." American Dental Association v. Cigna Corporation, supra, 2010 WL 1930128 at *4. Therefore, the plaintiff in the first count does not sufficiently allege a claim against Ganey and the City of Winter Haven for false arrest.

In any event, Ganey has demonstrated that he is entitled to qualified immunity. The plaintiff asserted at the hearing that he is suing the defendants in their official and personal capacities. Qualified immunity is available to an official sued in his personal capacity, but is not available in an official capacity suit. See Monell v. Department of Social Services, 436 U.S. 658 (1978). However, a police officer like Ganey (or a deputy like George or an employee like Feschak) is not properly sued in an official capacity,

since only a final policymaker may be held liable in that capacity. <u>Lloyd</u> v. <u>Van Tassel</u>, 318 Fed. Appx. 755, 760 (11th Cir. 2009)(unpub. dec.)

Ganey filed an affidavit in support of a claim of qualified immunity and moved, at the hearing, for summary judgment on that issue. However, since Ganey's motion was not expressly noticed as a hearing on a motion for summary judgment, the plaintiff was given twenty-one days to file an opposing affidavit and was told that, at that time, the matter would be taken under advisement (Doc. 91). The plaintiff filed a rebuttal affidavit on May 6, 2010 (Doc. 96).

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). At the summary judgment stage of the proceedings, "analysis for purposes of summary judgment must begin with a description of the facts in the light most favorable to the plaintiff." <u>Davis</u> v. <u>Williams</u>, 451 F.3d 759, 763 (11th Cir. 2006)(citation omitted).

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Vineyard</u> v. <u>Wilson</u>, 311 F.3d 1340, 1346 (11th

Cir. 2002)(quotation and citation omitted). To receive qualified immunity protection, the government official must first establish that he was acting within his discretionary authority at the time of the alleged violation. <u>Cottone</u> v. <u>Jenne</u>, 326 F.3d 1352, 1357 (11th Cir. 2003). Once that is shown, the plaintiff bears the burden of proving (1) that the official violated a constitutional right and (2) that that right was clearly established at the time the official acted. <u>Saucier</u> v. <u>Katz</u>, 533 U.S. 194, 200-201 (2001), modified by <u>Pearson</u> v. <u>Callahan</u>, 555 U.S. ____, ___, 129 S.Ct. 808, 818 (2009)(holding that district courts have discretion as to the order in which to address the two prongs).

Although the plaintiff may think otherwise, Ganey was clearly acting pursuant to his job functions and within the scope of his authority as an officer, and therefore within his discretionary authority, when he arrested the plaintiff. <u>See</u> <u>Jordan</u> v. <u>Doe</u>, 38 F.3d 1559, 1566 (11th Cir. 1994). The question then becomes whether the officer violated the plaintiff's Fourth Amendment rights, and whether that right was clearly established in these circumstances. <u>Pearson</u> v. <u>Callahan</u>, <u>supra</u>.

Because the plaintiff was arrested without a warrant, the officer, to receive qualified immunity, has the burden of demonstrating that it was

based on either probable cause or arguable probable cause to arrest. Ortega

v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996); Wood v. Kesler, 323 F.3d

872, 878 (11th Cir. 2003), cert. denied, 540 U.S. 879 (2003). "Probable cause

exists where the facts and circumstances within an officer's knowledge and

of which he had reasonably trustworthy information are sufficient to warrant

a person of reasonable caution in the belief that an offense has been or is

being committed by the person to be arrested." United States v. Allison, 953

F.2d 1346, 1350 (11th Cir. 1992)(citation omitted). Probable cause requires

only a fair probability or substantial chance of criminal activity. Id.

Construing the facts in the light most favorable to the plaintiff, that standard

was met here. This conclusion is based upon the affidavits filed by Ganey

and the plaintiff that outline the circumstances of the plaintiff's arrest (Ganey

Aff., Doc. 54-2; Stricker Aff., Doc. 96).

　　　　　Around June 2006, a Winter Haven Police Department detective

was notified by the Florida Department of Motor Vehicles that the plaintiff

had turned in his state-issued license plate and requested "that any

information kept by the State in its computer system regarding his vehicle be

expunged" (Doc. 54-2, ¶2). The plaintiff affirms that he "cancelled his

Florida license ... and replaced it with a valid Pembina license" (Doc. 75,

¶17)(emphasis omitted). The detective subsequently approached Ganey to discuss the plaintiff's behavior (Doc. 54-2, ¶3). In response, Ganey told the detective that the plaintiff might be a "common law activist," based on his experience with a joint domestic terrorism task force (id., ¶¶ 2, 3). At the detective's request, Ganey surveilled the plaintiff's residence over the next few weeks, noticing that the plaintiff had attached a license plate to his vehicle entitled "Little Shell Pembina Band of North America" (id., ¶4).

After processing the plaintiff's tag and the vehicle identification number, Ganey determined that, while the plaintiff possessed a valid driver's license, his vehicle was not validly registered in Florida (id., ¶5). Ganey witnessed the plaintiff drive his car without proper tags and subsequently stopped the plaintiff and arrested him (id., ¶¶ 8-11). The traffic stop occurred in the plaintiff's home driveway (Doc. 94, p. 6). During the stop, the plaintiff produced a Little Shell Pembina Band-issued driver's license and two treaties purporting to show the sovereignty of the Pembina Nation (Doc. 54-2, ¶9; Doc. 94, p. 8).

Florida law provides, "Except as otherwise provided in this chapter, every owner or person in charge of a motor vehicle that is operated or driven on the roads of this state shall register the vehicle in this state."

§320.02, Fla. Stat. The plaintiff does not identify any exception to this requirement, and none is apparent. Accordingly, Ganey had probable cause to believe that the law was being violated.

While the additional charges of counterfeit tag and counterfeit driver's license, as the plaintiff points out, were incorrect and later *nolle prossed*, that circumstance does not affect whether Ganey had probable cause to arrest the plaintiff. The validity of an arrest does not turn on whether the initial charge was valid, but whether the arrest was supported by probable cause. See Wells v. Bonner, 45 F.3d 90, 95 (5th Cir. 1995). "Indeed, '[w]hen an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest.'" Lee v. Ferraro, 284 F.3d 1188, 1196 (11th Cir. 2002)(quoting United States v. Saunders, 476 F.2d 5, 7 (5th Cir. 1973)). Here, the presence of probable cause was confirmed by the plaintiff's conviction for an unregistered motor vehicle, as well as for attaching an unassigned tag (see §320.261, Fla. Stat.).

Since the plaintiff's arrest was based upon probable cause, there was no constitutional violation. Accordingly, Ganey is entitled to qualified

immunity and the first count fails as to him. Furthermore, as explained later, this claim is independently foreclosed under Heck v. Humphrey, supra, as a result of the plaintiff's unchallenged convictions.

To the extent that the plaintiff seeks recovery in the first count against the City of Winter Haven for false arrest, that claim is defeated by the conclusion that there was no constitutional violation. The plaintiff alleges that his constitutional rights were violated by the City of Winter Haven because Ganey was carrying out its policies and customs when he was falsely arrested (Doc. 51, pp. 13-14). However, "an inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred." Rooney v. Watson, 101 F.3d 1378, 1381 (11th Cir. 1996), cert. denied 522 U.S. 966 (1997); see City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the [conduct] is quite beside the point."). Additionally, as with Ganey, this claim is foreclosed by Heck v. Humphrey, supra.

B. Second Claim.

The plaintiff's second count is stated as "the unlawful incarceration of [the plaintiff] by Sheriff Deputy Ashley N. George in the Polk County Jail without a warrant and without an order from a magistrate judge or judge, as a direct and approximate [sic] result of the inadequacy of the training and/or supervision by the Polk County Sheriff's Office" (Doc. 51, ¶56). The amended complaint alleges further that George was a "Book-In Deputy" and that he "was not himself a magistrate and did not have an arrest warrant or an order from a magistrate or judge authorizing him to book me in or incarcerate me" (id., ¶¶ 20, 21).

This claim is patently frivolous, as I told the plaintiff at the first hearing. George was simply carrying out his routine, ministerial duties in processing arrestees into the jail. The plaintiff alleges no facts showing that George did anything wrong. There is no basis for the plaintiff's belief that George should not have booked him in without an arrest warrant or an order from a judge. Thus, George would not be liable for performing his duties if he processed an arrestee who was subsequently determined to have been arrested without probable cause. In all events, the plaintiff was properly arrested on the basis of probable cause and that certainly authorized his being

booked-in. This claim is so baseless it would not survive under Conley v. Gibson, supra, much less under Twombly and Iqbal.

The plaintiff may be claiming relief in the second count on claims of false imprisonment by the Sheriff of Polk County, Grady Judd, for failing to oversee and train deputies at the Polk County jail (Doc. 51, p. 4). However, while Sheriff Judd is listed as a defendant (id.), he is not otherwise mentioned in the amended complaint. Thus, there are no factual allegations regarding anything Sheriff Judd either did, or failed to do, in connection with overseeing or training deputies working at the jail. Consequently, this claim fails under Twombly and Iqbal. Independently, this count alleging "unlawful incarceration" is foreclosed by Heck v. Humphrey, supra.

C. Third Claim.

The third count is based upon the plaintiff's re-arrest purportedly for failure to appear at a hearing (Doc. 51, ¶57). Arguably, since the plaintiff had in fact appeared at his hearing, this claim could be viable. Unfortunately for the plaintiff, he has not identified any individual who was responsible for the alleged mistake. Rather, he blames it on Ganey merely because Ganey had originally arrested him (id.). However, there are no facts alleged indicating that Ganey had anything to do with the plaintiff's arrest for failure

-19-

to appear. Accordingly, he cannot plausibly be held liable for the plaintiff's re-arrest. And since no one else has been identified as having caused the plaintiff's arrest for failure to appear, the claim cannot support an award of damages.

D. Fourth Claim.

The fourth count alleges "that the State of Florida unlawfully and without cause, held [the plaintiff] in custody to answer for alleged crimes from July 12, 2006[,] until the hearing on June 15, 2007" (id., ¶58). Of course, the plaintiff was not in custody for that period, as that term is generally understood, since he was released on bond for all but a few days. Regardless, the claim fails on several grounds. In the first place, although the State of Florida was named as a defendant in the initial complaint, it was not named as a defendant in the amended complaint (see id., p. 4). Further, the plaintiff has not alleged any facts showing that the State of Florida committed some violation of federal law. In all events, the Eleventh Amendment to the United States Constitution precludes the plaintiff from suing the State of Florida in federal court. See, e.g., Fitzgerald v. McDaniel, 833 F.2d 1516, 1520 (11th Cir. 1987).

E. Fifth Claim.

The plaintiff's fifth count is for malicious and vindictive prosecution against Judge Williams and Copley (Doc. 51, ¶59). Both defendants, however, are immune from suit.

Judges are entitled to absolute judicial immunity from damages for acts or omissions associated with the judicial phase of the criminal process. Judicial immunity does not apply only in situations where the judge, acting in his or her judicial capacity, ruled "in clear absence of all jurisdiction." Sibley v. Lando, 437 F.3d 1067, 1070 (11th Cir. 2005). Since this is not such a situation, Judge Williams has met his burden of establishing absolute immunity. Brown v. Crawford County, Ga., 960 F.2d 1002 (11th Cir. 1992). The plaintiff alleges no facts showing that Judge Williams's actions and sentencing in the underlying state case did not constitute a normal judicial function within the scope of his assigned jurisdiction.

Similarly, Copley is immune from suit for malicious prosecution. Thus, Copley is entitled to absolute prosecutorial immunity, which extends to all actions the prosecutor takes while performing in his advocacy for the government, such as preparing for trial, appearing in court, presenting evidence, and preparing and filing charges. Bias v. Crosby, 346 Fed. Appx. 455, 457 (11th Cir. 2009)(unpub. dec.). Therefore, the filing of charges, the

decision not to prosecute other charges, and the actual prosecution of the plaintiff are well within Copley's prosecutorial responsibilities, so that he is immune from suit.

In addition, this claim for malicious prosecution is foreclosed by Heck v. Humphrey, supra.

F. Sixth Claim.

The plaintiff's final claim in the sixth count is against Judge Williams and Copley for involuntary servitude for the alternative community service that was imposed as part of the plaintiff's sentence (Doc. 51, ¶60). For the reasons just explained, both defendants are immune from suit for their actions leading to the sentence. Furthermore, where a person is tried, convicted, and sentenced, no issue of involuntary servitude arises. Omasta v. Wainwright, 696 F.2d 1304 (11th Cir. 1983). And, once again, this claim is barred by Heck v. Humphrey, supra.

This review of the six claims reveals that Ron Feschak, who is listed as a defendant (Doc. 51, p. 4), is not mentioned in any one of them. In the fact section of the amended complaint, the plaintiff alleges that Feschak is a full-time employee of the State Attorney's Office, although his role in that office is not specified (id., ¶¶ 29, 32). He is alleged to have prepared the

two citations (*i.e.*, the informations) on which the plaintiff was convicted (id.). The informations, however, were signed by Copley, and Feschak's name does not appear on them (id., Exs. B, C). There are no facts alleged that would plausibly indicate that Feschak committed a violation of federal law with respect to the plaintiff. Moreover, since Feschak is not mentioned in any one of the six counts, no claim has been asserted against him. But even if there had been, it would be barred by Heck v. Humphrey, supra. Accordingly, Feschak should be dismissed from this lawsuit.

## IV.

Not only are the plaintiff's six claims meritless, but as the defendants argue vigorously in their motions to dismiss, the Supreme Court's decision in Heck v. Humphrey, supra, bars most of the plaintiff's claims (Doc. 54, p. 2; Doc. 58, p. 5; Doc. 63, p. 5; Doc. 79, p. 4). In that case, the Supreme Court held that §1983 claims by a convicted plaintiff for allegedly unconstitutional harms are barred if recovery on the claim would necessarily imply that the conviction was unlawful. 512 U.S. at 486-87. The Court explained (id. at 487)(footnote omitted):

> [I]n order to recover damages for allegedly
> unconstitutional conviction or imprisonment, or for
> other harm caused by actions whose unlawfulness
> would render a conviction or sentence invalid, a

-23-

§1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. §2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under §1983.

However, Heck does not bar claims that do not imply the invalidity of a conviction. Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003). Where, for example, an illegal search occurred followed by a valid conviction, a successful §1983 claim regarding the search would not necessarily imply the invalidity of the conviction. Id.

The false arrest claim in count one, if successful, would clearly imply the invalidity of the conviction for no motor vehicle registration since that was one of the charges for which he was arrested. Accordingly, Heck bars that claim.

The claim in count two for unlawful incarceration is predicated upon the contention that the arrest was unlawful. Thus, as with count one, this claim would imply the invalidity of the conviction for no motor vehicle registration. Accordingly, it also is barred by Heck.

-24-

The claim in count three for unlawful incarceration is based upon the re-arrest for failure to appear. Damages for that mistaken arrest would not necessarily imply that the convictions were invalid. Therefore, <u>Heck</u> does not preclude it.

The vacuous claim in count four against the State of Florida is based upon, if anything at all, the arrest. Thus, it is barred by <u>Heck</u> since, if successful, it would necessarily imply the invalidity of the conviction for no motor vehicle registration.

The claims in counts five and six against Judge Williams and Copley for malicious and vindictive prosecution and for involuntary servitude are founded on the new charges prosecuted by Copley and tried by Judge Williams. Unquestionably, these claims, if successful, would necessarily imply the invalidity of the plaintiff's convictions. They are, therefore, barred by <u>Heck</u>.

V.

For these reasons, I recommend that the defendants' motions to dismiss be granted, and that all of the counts and all of the defendants be dismissed. For good measure, I also recommend that defendant Ganey's alternative motion for summary judgment be granted, and that judgment

dismissing the first count be entered in favor of the defendant, as well as the City of Winter Haven.

Respectfully submitted,

THOMAS G. WILSON
DATED: JUNE /c, 2010   UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. 636(b)(1).